IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


PAULA ALLEN-FORTE ;
LISA J. ADCOCK; SHARON RAINS;
AND TERESA THORNTON                                              PLAINTIFFS


VS.                           CASE NO. 4:10-cv-4171


DOMTAR INDUSTRIES, INC.                                          DEFENDANT

## MEMORANDUM OPINION

Before the Court is a Motion for Partial Summary Judgment filed on behalf of Defendant Domtar Industries, Inc. ("Domtar"). (ECF No. 33). Plaintiffs have filed a response. (ECF No. 38), and Domtar has replied. (ECF No. 43). The Court finds this matter ripe for consideration.

## BACKGROUND

Plaintiffs Paula Allen-Forte, Lisa Adcock, Sharon Rains, and Teresa Thornton are women who were employed at Domtar's paper mill located in Ashdown, Arkansas. In March 2009, as a result of employee absences that Domtar alleges were more than double the national average, Domtar began a review process of the absentee records of its employees. Domtar conducted this special review process pursuant to their Absence, Tardy, and Leave Policy ("ATL Policy"). Domtar's ATL policy sets forth an elaborate "point system" for employee absence management that triggers certain disciplinary and adverse actions against an employee depending on how many absence "points" the employee has accumulated. The policy states that an employee will be terminated if they accumulate ten points. However, this policy also contains a special review provision which provides: "Any employee whose accumulated absences, tardiness and/or leave earlies (ATL's), whether excused or unexcused, is deemed by

1

management to be excessive for a particular time period will be subject to special review in conjunction with Human Resources, to determine if this individual's employment should be continued." (ECF No. 34, Exh. 8).

Pursuant to this special review provision in the ATL policy, Domtar states that they identified approximately 107 employees who had higher than acceptable absentee rates. Domtar then developed criteria to aid them in getting this list of 107 employees down to a manageable number of employees whom they could review more closely. Domtar narrowed the list to 64 employees who had an average absence rate of 23% for 2007-2008. Of these 64, Domtar pinpointed 29 employees who had a pattern of particularly excessive absenteeism in 2007 and 2008. To further narrow down this list of 29, Domtar claims that they looked at: (1) whether the employee had a pattern of excessive absenteeism over multiple years; (2) whether the employee had been counseled/disciplined regarding the need for immediate improvement in their attendance; (3) whether the employee was absent from work at the time of the review; and (4) whether the employee was aware of the expectation of reporting to work on a regular basis, but failed to meet the standard. (ECF No. 34, pp. 3). For the thirteen employees who were *not* absent from work during this time of special review, Domtar made the decision to counsel them on the consequences of their continued absenteeism but did not terminate them at that time. Of the sixteen employees who *were* absent from work during the time of the special review, Domtar states that seven had not been previously counseled for absenteeism, three chose to retire, one chose to resign, and one had a work-related injury status that could not be determined at the time. The four remaining employees on the list, Allen-Forte, Adcock, Rains, and Thornton, were terminated on May 22, 2009.

The absence report which Domtar relied upon during this special review lists the absentee rates for each Plaintiff as follows:

|  | **2007** | **2008** | **2009** |
|---|---|---|---|
| **Teresa Thornton** | 95% | 75% | 100% |
| **Sharon Rains** | 73% | 70% | 100% |
| **Lisa Adcock** | 56% | 42% | 100% |
| **Paula Allen-Forte** | 14% | 40% | 100% |

(ECF No. 34, Exh. 7).

Each Plaintiff claims that her absences were due to health issues and that at least some of the absences were covered by the Family Medical Leave Act ("FMLA"), 29 U.S.C. 2601, *et seq*. It should be noted that the list of 2007-2009 employee absence rates that Domtar relied upon during the special review did not differentiate between excused, unexcused, or FMLA absences for any of the 64 employees on the list.

Exhibits reflect that Thornton received written corrective discipline for her excessive absences in August 2007 and September 2008. Rains received written corrective discipline for excessive absences in July 2006 and October 2008. Adcock received written corrective discipline for excessive absences in January 2004, October 2004, and March 2008. Allen-Forte received written corrective discipline for excessive absences in November 2004 and July 2006.

Plaintiff Paula Allen-Forte's termination was submitted to arbitration pursuant to Domtar's collective bargaining agreement with the local union. The arbitrator held that Domtar incorrectly calculated Allen-Forte's total absences because it counted some FMLA absences against her in 2007 and 2008. The arbitrator had no opinion as to whether Allen-Forte's non-

3

FMLA absences could be considered excessive enough to warrant termination. Because the arbitrator found that FMLA absences had been improperly counted by Domtar, the arbitrator vacated the discharge and ordered that Allen-Forte be reinstated. It does not appear that reinstatement ever occurred, and neither party has clearly communicated to the Court why this is the case. As to the three remaining Plaintiffs, it appears that the Union declined to have their terminations submitted to arbitration.

Plaintiffs filed this suit on November 20, 2010, alleging that Domtar discriminated against them on the basis of their gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* Plaintiffs allege that there were male employees with a comparable amount of absences, or more absences, who were not terminated. Plaintiffs also allege that Domtar was required to submit these terminations to arbitration but failed to do so. In addition to their gender discrimination claims, Plaintiffs allege violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* Domtar has not addressed Plaintiffs' ADA and FMLA claims in their Motion for Summary Judgment. Therefore, these claims will not be considered by the Court at this time.

## STANDARD OF REVIEW

The standard of review for summary judgment is well established. The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir.1995). The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial-whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir.1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund*, 800 F.2d 742, 746 (8th Cir.1986). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir.1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of LeSueur*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256.

## DISCUSSION

In their Complaint, Plaintiffs allege that they were discriminated against on the basis of their gender. Plaintiffs assert that there were male employees with a comparable amount of

absences who were not terminated. Plaintiffs also allege that these male employees were given more warnings and opportunities to correct their excessive absenteeism than Plaintiffs were given.

In gender discrimination cases under Title VII, courts apply the familiar three-step burden shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, the plaintiff must first establish a *prima facie* case of discrimination. If the plaintiff is able to do this, the burden of production then shifts to the defendant to assert a legitimate, non-discriminatory reason for the alleged discrimination. If the defendant asserts such a reason, the burden then shifts back to the plaintiff to establish that the asserted reason was merely a pretext for discrimination. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011). The Court will review each of the Plaintiffs claims in light of this burden shifting framework.

**Plaintiffs' prima facie case of gender discrimination**

In order to establish a *prima facie* case of wrongful termination, each Plaintiff must show 1) that she is a member of a protected class; 2) that she was meeting her employer's legitimate job expectation; 3) that she suffered an adverse employment action; and 4) that similarly situated individuals outside of the protected class were treated differently. *Tolen v. Ashcroft*, 377 F.3d 879, 882 (8th Cir. 2004). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Torgerson* at 1047.

Domtar concedes that Plaintiffs have shown the first and third elements. Plaintiffs are females and members of a protected class. Also, each Plaintiff has suffered an adverse employment action by being terminated from their employment on May 22, 2009. However, Domtar maintains that Plaintiffs have not established a *prima facie* case of discrimination

6

because they have failed to show that they were meeting the legitimate expectations of their employer or that similarly situated male employees were treated differently.

### *Legitimate Expectations*

Domtar argues that Plaintiffs' excessive absences alone are proof that Plaintiffs were not meeting the legitimate expectations of their employer. It is undisputed that Plaintiffs were 100% absent from work in 2009 and that their absence rates ranged from 14% to 95% in 2007 and 40% to 75% in 2008. It is also undisputed that each Plaintiff received at least two corrective discipline notices regarding their excessive absences. Plaintiffs contend that they were properly absent from work and accepting "Sickness & Accident" benefits from Domtar at the time they were terminated.

Domtar admits that they had approximately 107 employees who were excessively absent from work. At least 64 of these employees had an average absence rate of 23% for 2007-2008. Clearly, under Domtar's ATL Policy "point system," employees were able to have excessive absences while presumably meeting Domtar's expectations. In other words, these employees had excessive absences but still had not accumulated ten points under the system that would result in automatic termination. While the breakdown and abuse of this point system led Domtar to conduct a special review under the ATL Policy, this does not change the fact that the point-system portion of the ATL policy seemed to allow for the accumulation of excessive absences. For purposes of establishing a *prima facie* case, the Court is satisfied that a Domtar employee could have excessive absences while still meeting Domtar's legitimate expectations. Therefore, Plaintiffs have shown that they were arguably meeting the legitimate expectations of their employer at the time of their termination.

*Similarly Situated*

"The test to determine whether employees are 'similarly situated' to warrant a comparison to a plaintiff is a 'rigorous' one." *E.E.O.C. v. Kohler Co.,* 335 F.3d 766, 775 (8th Cir. 2003) (citing *Harvey v. Anheuser-Busch, Inc*., 38 F.3d 968, 972 (8th Cir.1994)). Plaintiffs have the burden of proving that they and the "disparately treated [male] employees were similarly situated in all relevant aspects." *Id*. (internal quotation omitted). Plaintiffs must "point to individuals who … 'have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.'" *Marquez v. Bridgestone/Firestone, Inc.*, 353 F.3d 1037, 1038 (8th Cir. 2004) (quoting *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000)).

Plaintiffs maintain that all of the 64 employees that Domtar looked closely at under the special review had "excessive absences," therefore, all of the employees were similarly situated. Domtar argues that there are no male employees similarly situated to Plaintiffs because Plaintiffs were the only four employees who met their special review criteria: (1) whether the employee had a pattern of excessive absenteeism over multiple years; (2) whether the employee had been counseled/disciplined regarding the need for immediate improvement in their attendance; (3) whether the employee was absent from work at the time of the review; and (4) whether the employee was aware of the expectation of reporting to work on a regular basis, but failed to meet the standard.

The Court recognizes that each of the employees reviewed by Domtar had excessive absences. However, for purposes of a similarly situated analysis in this case, the Court must look at other relevant factors that distinguish these employees with excessive absences. Domtar has put forth evidence of the factors they used to hone their list of excessively absent employees

down to a manageable number for further review. Plaintiffs state that they believe these factors were "created" by Domtar during discovery. However, Domtar has submitted documentation to the contrary showing that they referenced these factors in correspondence with the EEOC as early as July 2009. (ECF No. 43, Exh. 1). Plaintiffs' bare allegation that these factors were fabricated during discovery does not present a legitimate factual dispute.

Employing the criteria above, Domtar came up with a list of twenty-nine employees who they felt had a pattern of particularly excessive absenteeism in 2007, 2008, and 2009. Of these twenty-nine employees, thirteen were at work during the time of the review. Because they were currently working, Domtar made the decision to counsel them on the consequences of their continued absenteeism but did not terminate them at that time. Of the sixteen employees who were absent from work during the time of the special review, Domtar states that seven had not been previously counseled for absenteeism, three chose to retire, one chose to resign, and one had a work-related injury status that could not be determined at the time. Domtar claims that Plaintiffs were the four remaining employees on the list. The Court finds that this group of sixteen employees who were absent at the time of the review are the most proper group of employees to compare with Plaintiffs for purposes of a similarly situated analysis.

### *Teresa Thornton*

It is undisputed that Teresa Thornton had the worst absence record of any employee at Domtar, with absence percentages of 95% in 2007, 75% in 2008, and 100% in 2009. Her 2007-2008 absence average was 85%. The records show that Thornton's 2007-2008 absence average was at least 41% higher than that of any other male employee who, like Thornton, was 100%

9

absent in 2009 and absent during the time of the special review.[1] Even widening the comparison to male employees who were not 100% absent in 2009 and not absent at the time of the special review, Thornton's 2007-2008 absence average was still at least 33% higher than that of the closest male employee.[2]

Because Thornton clearly had the worst absence record at Domtar and because her absence average was substantially higher than any other male employee under review, Thornton has not shown that she is similarly situated to any male employee who was not terminated. Accordingly, she has failed to establish a *prima facie* case of gender discrimination.

*Sharon Rains*

It is undisputed that Sharon Rains had the third worst absence record of any employee at Domtar with absence rates of 73% in 2007, 70% in 2008, and 100% in 2009. Her 2007-2008 absence average was 72%. The only two employees with higher absences than Rains were Teresa Thornton and Jacqueline White. The records show that Rains' 2007-2008 absence average was at least 28% higher than that of any other male employee who was also 100% absent in 2009 and absent during the time of the special review. Even widening the comparison to male employees who were not 100% absent in 2009 and not absent at the time of the special review, Rains' 2007-2008 average was still at least 20% higher than that of the closest male employee.

Because Rains clearly had one of the worst absence records at Domtar, there were no male employees with a higher absence rate, and her absence average was substantially higher

---

[1] Male employees 100% absent in 2009 and absent at the time of the special review: John W. Miller, 44% absence average for 2007-2008; Brandon Dickinson, 43% absence average for 2007-2008; Stanley Snead, 43% absence average for 2007-2008; Charles Cook, 34% absence average for 2007-2008; Joe French, 31% absence average for 2007-2008; Thomas Miller, 29% absence average for 2007-2008; Charles Crowe, 25% absence average for 2007-2008; Robert Forbes, 23% absence average for 2007-2008. (ECF No. 34, Exh. 7).
[2] James McGuire, 52% absence average for 2007-2008, 0% absent in 2009. (ECF No. 34, Exh. 7).

than any other male employee under review, Rains has not shown that she is similarly situated to any male employee who was not terminated. Accordingly, she has failed to establish a *prima facie* case of gender discrimination.

### *Lisa Adcock*

It is undisputed that Lisa Adcock had absence rates of 55% in 2007, 42% in 2008, and 100% in 2009. Her 2007-2008 absence average was 49%. Adcock's 2007-2008 absence average is at least 5% higher than that of any other male employee who was also 100% absent in 2009 and absent during the time of the special review.[3] No male employee who was also 100% absent in 2009 and absent during the time of review had an absence percentage average equal to or greater than Adcock. However, the Court does not feel that a 5% variation is enough to warrant finding that Adcock is not similarly situated to other male employees who were not terminated. For the purpose of demonstrating a *prima facie* case, despite some degree of variation in the absence rates, the Court finds that Adcock has shown that she is similarly situated to at least some portion of the male employees who were 100% absent in 2009, absent at the time of the special review, and not terminated.

### *Paula Allen-Forte*

It is undisputed that Paula Allen-Forte had absence rates of 14% in 2007, 40% in 2008, and 100% in 2009. Allen-Forte's 2007-2008 absence average was 27%. There were at least six male employees who were also 100% absent in 2009 and absent at the time of the special review who had an average absence rate in 2007-2008 that was higher than Allen-Forte's.[4] Allen-Forte's 2007-2008 absence average is 2% and 4% higher than the two remaining male employees

---

[3] John Miller, 44% absence average for 2007-2008.
[4] John W. Miller, 44% absence average for 2007-2008; Brandon Dickinson, 43% absence average for 2007-2008; Stanley Snead, 43% absence average for 2007-2008; Charles Cook, 34% absence average for 2007-2008; Joe French, 31% absence average for 2007-2008; Thomas Miller, 29% absence average for 2007-2008.

who were 100% absent in 2009 and absent during the time of the special review.[5] For the purpose of demonstrating a *prima facie* case, despite some degree of variation in the absence percentages, the Court finds that Adcock has shown that she is similarly situated to at least some portion of the male employees who were 100% absent in 2009, absent at the time of the special review, and not terminated.

### Legitimate, non-discriminatory reason for the termination

Because Plaintiff Lisa Adcock and Plaintiff Paula Allen-Forte have established a *prima facie* case for gender discrimination, the burden of production now shifts to Domtar to assert a legitimate, non-discriminatory reason for Adcock's and Allen-Forte's terminations.

In this case, Domtar has easily carried its burden of setting forth a legitimate, non-discriminatory reason for Adcock and Allen-Forte's terminations. As mentioned above, Adcock had excessive absences and had received written corrective discipline for these absences in January 2004, October 2004, and March 2008. Allen-Forte also had excessive absences and received written corrective discipline for these absences in November 2004 and July 2006. Their absences came under scrutiny when Domtar elected to enforce the special-review provision of the ATL Policy, and on May 22, 2009, Domtar informed Adcock and Allen-Forte that they were being terminated for excessive absences in violation of the ATL Policy.

### Pre-text

Domtar has set forth a legitimate, non-discriminatory reason for Adcock and Allen-Forte's terminations. Now the burden shifts back to Plaintiffs to establish that Domtar's asserted reason for their terminations was merely a pretext for discrimination. Plaintiffs' burden to show pretext "'merges with the ultimate burden of persuading the court that [they were] the victim of

---

[5] Charles Crow, 24% absence average for 2007-2008; Robert Forbes, 23% absence average for 2007-2008.

intentional discrimination.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011) (quoting *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). A plaintiff may demonstrate a material question of fact regarding pretext in two ways: (1) by showing that "the employer's explanation is unworthy of credence ... because it has no basis in fact"; or (2) "by persuading the court that a [prohibited] reason more likely motivated the employer." *Torgerson* at 1047 (quotations omitted).

In this case, Plaintiffs do not appear to argue that Domtar's explanation has no basis in fact. Plaintiffs acknowledge that Domtar was conducting a special review of its employees absences and that Plaintiffs each had what could be considered excessive absences. Plaintiffs appear to be arguing that gender discrimination, rather than excessive absences, was the more likely motivating factor for Plaintiffs' terminations.

Plaintiffs argue that pretext is evident because (1) male employees with a comparable amount of absences or more absences were not terminated; (2) Domtar impermissibly counted FMLA leave against Plaintiffs; (3) male employees were given more extensive warnings about their absenteeism; and (4) Domtar, without warning, abandoned the ATL Policy "point system" which allowed an employee to accrue ten points before being terminated.

Reviewing the evidence in the light most favorable to Plaintiffs Lisa Adcock and Paula Allen-Forte, the Court finds that there is no material question of fact regarding pretext. While it may be true that Domtar incorrectly counted any FMLA leave Adcock or Allen-Forte might have had, this in itself shows no evidence of gender discrimination. Adcock and Allen-Forte do not allege that male employees' FMLA absences were treated differently. It is also of no consequence that Domtar chose to enforce the special review provision of the ATL Policy. The text of the policy clearly allowed Domtar to deviate from the point system when they felt it was

warranted under certain circumstances. Adcock and Allen-Forte have shown no evidence that the ATL Policy was selectively enforced against female employees. This is evidenced by the fact that there were female employees with *higher* absences than Plaintiffs who were not terminated. Of the sixteen employees who were 100% absent in 2009 and absent from work at the time of the special review, eight were women. These eight women included the four Plaintiffs. Jacqueline White, one of these eight female employees, had a higher absence rate than both Adcock and Allen-Forte and was not terminated.[6] Joann Withem, Lora Burris, and Sherrilynn Jackson, the three remaining female employees on the list, also had higher absence rates than Allen-Forte and were not terminated.[7] This alone tends to show that Domtar was not discriminating against females in conducting the special review.

Turning to Plaintiffs' claims that men were afforded more warnings, of the eight men who were a part of this group of sixteen, exhibits show that not all had received corrective discipline at the time that Plaintiffs were terminated. For example, Charles Cook, Charles Crowe, and John Miller received their first letters warning them of their absenteeism issues in June 2009. (ECF No. 39, Exh. 14). Robert Forbes had received only one written corrective discipline notice whereas Plaintiffs had received multiple corrective discipline notices. *Id*. This is clear evidence that Domtar applied the criterion of terminating only those employees who had not yet received corrective discipline or multiple warnings.

With the exception of James Heflin, a male employee with a higher average absence rate than Adcock and Allen-Forte for 2007-2008, the Court finds no evidence of male employees with comparable absences who were warned or disciplined *more* than Plaintiffs and not

---

[6] Jacqueline White, 58% absent in 2007, 84% absent in 2008, 100% absent in 2009.
[7] Jacqueline White, 58% absent in 2007, 84% absent in 2008, 100% absent in 2009; Joann Withem, 10% absent in 2007, 82% absent in 2008, 100% absent in 2009; Lora Burris, 1% absent in 2007, 65% absent in 2008, 100% absent in 2009; Sherrilynn Jackson, 4% absent in 2007, 61% absent in 2008, 100% absent in 2009.

terminated in May 2009. Presumably, the reason Heflin was not terminated in May 2009 was that he did not meet the special review criteria. He was not 100% absent from work in 2009. Moreover, Heflin was eventually fired in April 2010 for excessive absences under the special review provision of the ATL Policy. Heflin's termination is illustrative of the fact that Domtar continued to review the excessive absences of its employees after terminating Plaintiffs. The undisputed evidence shows that there were male employees who were terminated for excessive absences in the months following Plaintiffs' terminations. (ECF No. 43, Exh. A and Exh. F).

For the reasons stated above, the Court finds that Plaintiffs Adcock and Allen-Forte have failed to show pretext. Therefore, summary judgment in favor of Domtar is appropriate. In sum, none of the Plaintiffs has shown that their gender more likely motivated Domtar to terminate them than their excessive absences.[8] While Plaintiffs may take issue with the unfairness of applying a special review provision, terminating employees who are currently off work and receiving "Sickness & Accident" benefits, incorrectly considering FMLA leave, or terminating four women on the same day, the Court's purpose "is not to sit as a 'super-personnel department,' assessing the fairness, correctness, or wisdom of [an employer's] decision but whether it was motivated by intentional discrimination." *Garrick v. McHugh*, No. 5:10-CV-00292, 2011 WL 3241591 at *7 (E.D. Ark. July 29, 2011) (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 960 (8th Cir.1995)). There simply is not enough evidence to raise a material question of fact as to whether any intentional discrimination took place in this case.

**Back Pay/Front Pay**

Plaintiffs claim that they are each entitled to back pay and front pay as a result of the alleged gender discrimination. Because the Court has found that Domtar is entitled to summary

---

[8] Had the Court found that there were similarly situated male employees to Plaintiffs Thornton and Rains and continued to analyze their claims, they too would have failed to establish pretext for precisely the same reasons that Plaintiffs Adcock and Allen-Forte have failed to establish pretext.

15

judgment on Plaintiffs' gender discrimination claims, the Court need not address Domtar's argument that Plaintiffs are not entitled to back pay or front pay.

## CONCLUSION

For the reasons discussed herein and above, the Court finds that Defendant Domtar's Motion for Partial Summary Judgment as to all Plaintiffs' gender discrimination claims should be and hereby is **GRANTED**. Plaintiffs Paula Allen-Forte, Lisa Adcock, Sharon Rains, and Teresa Thornton's gender discrimination claims made pursuant to Title VII of the Civil Rights Act are **DISMISSED WITH PREJUDICE**. An Order of even date, consistent with this Opinion shall issue.

IT IS SO ORDERED, on this 5th day of July, 2012.

/s/ Susan O. Hickey
Hon. Susan O. Hickey
United States District Judge