IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


LISA J. ADCOCK; SHARON RAINS;
AND TERESA THORNTON                                                    PLAINTIFFS


VS.                              CASE NO. 4:10-cv-4171


DOMTAR INDUSTRIES, INC.                                                 DEFENDANT

### MEMORANDUM OPINION

Before the Court is a Second Motion for Summary Judgment filed on behalf of Defendant

Domtar Industries, Inc. ("Domtar").  (ECF No. 64).  Plaintiffs have filed a response.  (ECF No.

66), and Domtar has replied.  (ECF No. 69).  The Court finds this matter ripe for consideration.

### BACKGROUND

Plaintiffs Lisa Adcock, Sharon Rains, and Teresa Thornton are women who were

employed at Domtar's paper mill located in Ashdown, Arkansas.  In March 2009, as a result of

employee absences that Domtar alleges were more than double the national average, Domtar

began a review process of the absentee records of its employees.  (ECF No. 33-34).  Domtar

conducted this special review process pursuant to its Absence, Tardy, and Leave Policy ("ATL

Policy").  Domtar's ATL policy sets forth an elaborate "point system" for employee absence

management that triggers certain disciplinary and adverse actions against an employee

depending on how many absence "points" the employee has accumulated.  The policy states that

an employee will be terminated if she or she accumulates ten points.  However, this policy also

contains a special review provision which provides:  "Any employee whose accumulated

absences, tardiness and/or leave earlies (ATL's), whether excused or unexcused, is deemed by

management to be excessive for a particular time period will be subject to special review in conjunction with Human Resources, to determine if this individual's employment should be continued."  (ECF No. 34, Exh. 8).

Pursuant to this special review provision in the ATL policy, Adcock, Rains, and Thornton were terminated on May 22, 2009.  The absence report which Domtar relied upon during this special review lists the absentee rates for each Plaintiff as follows:

|  | 2007 | 2008 | 2009 |
|---|---|---|---|
| **Teresa Thornton** | 95% | 75% | 100% |
| **Sharon Rains** | 73% | 70% | 100% |
| **Lisa Adcock** | 56% | 42% | 100% |

(ECF No. 34, Exh. 7; ECF No. 65).

Exhibits reflect that, prior to the special review, Thornton received written corrective discipline for her excessive absences in August 2007 and September 2008.  Rains received written corrective discipline for excessive absences in July 2006 and October 2008.  Adcock received written corrective discipline for excessive absences in January 2004, October 2004, and March 2008.  (ECF No. 34, Exh. 11-13, 15-17).

Each Plaintiff claims that her absences from 2007-2009 were due to health issues and that at least some of the absences were covered by the Family and Medical Leave Act ("FMLA"), 29 U.S.C. 2601, *et seq.*  Specifically, Thornton's absences in 2007 contained three days of FMLA leave.  In 2007, 34% of Rains' absences were FMLA leave.  In 2008, 55% of Adcock's absences were FMLA leave.  When Plaintiffs were terminated in May 2009, they were not on FMLA leave.

At the time of their termination, Plaintiffs were off work and receiving "Sickness and Accident" benefits from Prudential Insurance. Each Plaintiff had begun to receive these benefits at some point in 2008.  (ECF No. 65, Exh. 10-12). Prudential provided these benefits to workers such as Plaintiffs if they met Prudential's definition of "disabled."  Prudential defined "disabled" as being unable to perform "the material and substantial duties" of an individual's regular job or any job for which an individual is reasonably fitted. (ECF No. 65, Exh. 10-12).

After their termination, Plaintiffs filed this suit alleging that Domtar discriminated against them on the basis of their gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*  Plaintiffs Adcock and Thornton also allege that Domtar discriminated against them on the basis of their disabilities in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*  Finally, all Plaintiffs allege violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*  On July 5, 2012, the Court granted summary judgment in favor of Domtar on Plaintiffs' gender discrimination claims.  (ECF No. 48-49).  Domtar now moves for summary judgment on Plaintiffs' remaining FMLA and ADA claims.

<u>STANDARD OF REVIEW</u>

The standard of review for summary judgment is well established.  The Federal Rules of Civil Procedure provide that when a party moves for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a); *Krenik v. County of LeSueur*, 47 F.3d 953 (8th Cir.1995).  The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied:

> The inquiry performed is the threshold inquiry of determining whether there is a
> need for trial-whether, in other words, there are genuine factual issues that
> properly can be resolved only by a finder of fact because they may reasonably be
> resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). *See also Agristor Leasing v. Farrow*, 826 F.2d 732 (8th Cir. 1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus. Union-Management Pension Fund*, 800 F.2d 742, 746 (8th Cir. 1986). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id*. at 252.

The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id*. The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

<u>DISCUSSION</u>

**I.      Plaintiffs Adcock and Thornton's ADA claim**

Adcock and Thornton allege that they were discriminated against on the basis of their disabilities. In order to establish an ADA claim, a plaintiff must show: (1) that she was disabled within the meaning of the ADA; (2) that she was qualified to perform the essential functions of the job at issue with or without accommodation; and (3) that she suffered an adverse employment action because of her disability. *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135

(8th Cir. 1999). If an employee is disabled within the meaning of the ADA, it is the disabled employee's responsibility "to inform the employer that an accommodation is needed." *Kobus v. College of St. Scholastica, Inc.*, 608 F.3d 1034, 1038 (8th Cir. 2010) (quotation omitted). "If the employee fails to do so, then [the] employer has no duty to accommodate." *Compton v. Arkansas Veterans Home*, No. 4:09-CV-814-DPM, 2012 WL 692896 at *2 (E.D. Ark. Mar. 1, 2012) (internal quotation omitted).

As to the threshold disability requirement, the parties have offered no argument regarding the precise details or seriousness of Plaintiffs' medical conditions. For this reason, the Court will assume that Adcock and Thornton, at the time of their termination, were disabled within the meaning of the ADA. It is also undisputed that Plaintiffs' terminations qualify as an adverse employment action under the ADA. The only remaining issues are whether Plaintiffs were qualified to perform the essential functions of the jobs at issue with or without accommodation and whether Plaintiffs ever requested accommodation.

First, Domtar argues that Plaintiffs' ADA claim must fail as a matter of law because it is undisputed that, at the time of their termination, Plaintiffs were not qualified to perform the essential functions of their jobs with or without accommodation. Domtar points out that Plaintiffs Adcock and Thornton were both receiving "Sickness and Accident" benefits from Prudential at the time of their termination. In order to obtain these benefits, both of the Plaintiffs represented to Prudential that they were unable to perform the "material and substantial duties" of their regular jobs at Domtar. Domtar argues that, because Plaintiffs admitted to Prudential that they were unable to perform the "material and substantial duties" of their jobs, they cannot now claim to have been "qualified to perform the essential functions" of their jobs as required to sustain a claim under the ADA. In sum, Defendant maintains that Plaintiffs have admitted that

5

they were completely disabled and that reasonable accommodation would not have been possible.

The Court finds Domtar's argument persuasive.  The undisputed evidence shows that Plaintiffs were given a full year of sickness and accident benefits because of medical conditions that prevented them from being able to fulfill their duties at Domtar.  In order to obtain these benefits, Plaintiffs represented to Prudential that they were, in fact, completely disabled. Plaintiffs now appear to claim the opposite but offer no clear explanation for how their representations to Prudential are consistent with their ADA claim that they were able to perform the essential functions of their job at the time of their termination.

In addition to the above-mentioned inconsistency, Plaintiffs' ADA claim is also deficient because they never actually requested that Domtar provide them with reasonable accommodations so that they could perform their work duties.  Defendant points out that, in Plaintiffs' Equal Employment Opportunity Commission ("EEOC) documentation, Plaintiffs admit that they never requested accommodation for their disabilities.  (ECF No. 65, Exh. 4-9). In response, Plaintiffs admit that they did not request accommodation, but they argue that requesting accommodation would have been futile.  Plaintiffs claim that the reasonable accommodation needed was "light duty" and that it was widely known among Domtar employees that Domtar "does not allow light duty."

Again, the Court finds Domtar's argument regarding the lack of accommodation request persuasive.  Even assuming that Plaintiffs were disabled within the meaning of the ADA and that they could have performed the essential functions of their jobs with reasonable accommodation, an employer's duty to accommodate is not triggered until they are aware of the need for accommodation.   Plaintiffs' belief that Defendant would not be willing to provide

accommodation if asked to do so does not relieve Plaintiffs of their responsibility to make the request.

Because the undisputed evidence shows that Plaintiffs admitted to being completely disabled at the time of their termination and unable to perform the essential functions of their jobs, and because Plaintiffs failed to request accommodation, summary judgment in favor of Domtar is appropriate as to Plaintiffs Adcock and Thornton's ADA claims.

## II.     Plaintiffs' FMLA Claims

Plaintiffs allege in their Complaint that they "were not given the benefit of the Family Medical Leave Act for their absences due to medical conditions before they were terminated." (ECF No. 1, ¶ 31). Domtar maintains that Plaintiffs' rights under the FMLA were not violated and that Plaintiffs' absences, even discounting FMLA leave, were excessive enough to warrant termination.

Under the FMLA, eligible employees are provided up to twelve (12) workweeks of unpaid leave during any twelve month period. 29 U.S.C. § 2612; *Darby v. Bratch*, 287 F.3d 673, 679 (8th Cir. 2002). Employers are prohibited from discriminating against employees who exercise their rights under the FMLA. 29 U.S.C. § 2615(a)(2); *Darby*, 287 F.3d at 679. An employee may maintain two types of claims under the FMLA: (1) interference claims "in which the employee alleges that an employer denied or interfered with his substantive rights under the FMLA"; and (2) retaliation claims "in which the employee alleges that the employer discriminated against him for exercising his FMLA rights." *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050 (8th Cir. 2006).

In this case, Plaintiffs do not appear to be making an interference claim under the FMLA. Plaintiffs have offered no evidence that Domtar prevented them from taking FMLA leave or that

Domtar even discouraged them from taking FMLA Leave. *see id*. ("Interference includes not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA.") (internal quotations omitted).  Rather, Plaintiffs' allegations against Domtar are more consistent with a retaliation claim.  Plaintiffs allege that their FMLA absences were considered along with their non-FMLA absences when Domtar began reviewing excessive employee absences. Plaintiffs allege that Domtar "violated the statute by using their covered Family Medical Leave Act absences in a punitive manner."  Domtar argues that Plaintiffs were not targeted for termination because of their FMLA absences but that Plaintiffs' pattern of excessive, non-FMLA absences over the years justified their termination.

Unlike an interference claim, a retaliation claim requires an employee to provide proof of retaliatory intent.  *Stallings*, 447 F.3d at 1051.  To establish a prima facie case of retaliation under the FMLA, Plaintiffs must show that they each engaged in activity protected under the FMLA, that they suffered an adverse employment action by Defendant, and that a causal connection existed between Plaintiffs' actions and the adverse employment action.  *Darby*, 287 F.3d at 679.  "Although not dispositive, the time lapse between an employee's protected activity and the employer's adverse action is an important factor when evaluating whether a causal connection has been established." *McBurney v. Stew Hansen's Dodge City, Inc*. 398 F.3d 998, 1003 (8th Cir. 2005) (quoting *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002)).

After reviewing the relevant intervals of time in this case, Plaintiffs have failed to establish a causal connection between their FMLA leave and Domtar's decision to terminate them.  Plaintiffs were terminated in May 2009.  Thornton and Rains' last FMLA leave was taken

8

in 2007, leaving an approximate two-year interval between their FMLA leave and subsequent termination. Adcock's last FMLA leave was taken in 2008, leaving an interval of roughly eighteen months between her FMLA leave and subsequent termination. This substantial lapse of time, coupled with the fact that each Plaintiff had been counseled regarding their excessive absences on multiple occasions over the years, even prior to taking FMLA leave, precludes finding a causal connection between Plaintiffs' FMLA leave and subsequent termination. *See McBurney*, 398 F.3d at 1003 (holding that six-month time interval between a plaintiff's return from FMLA leave and an adverse employment action precluded a finding of causal connection); *Kipp v. Missouri Highway & Transp. Comm'n.*, 280 F.3d 893, 897 (8th Cir. 2002) ("[T]he interval of two months between the complaint and [plaintiff's] termination so dilutes any inference of causation that we are constrained to hold as a matter of law that the temporal connection could not justify a finding in [plaintiff's] favor on the matter of causal link.").

Because Plaintiffs have not shown a causal connection between taking FMLA leave and Domtar's decision to terminate them, Plaintiffs have failed to establish a prima facie case of retaliation under the FMLA. For this reason, summary judgment in favor of Domtar is appropriate as to Plaintiffs' FMLA claims.[1]

---

[1] Even if Plaintiffs were able to establish a prima facie case of retaliation, their claims would still fail as a matter of law. Pursuant to the *McDonnell Douglas* burden-shifting framework, Domtar has set forth a legitimate, non-discriminatory reason for terminating Plaintiffs by establishing that Plaintiffs were excessively absent from work, even when discounting FMLA absences. *Phillips v. Mathews,* 547 F.3d 905, 912 (8th Cir. 2008). The burden then shifts to Plaintiffs to show that the asserted reason for termination was pretext for discrimination. *Id.* Plaintiffs have not offered evidence that establishes that Domtar's termination decision had no basis in fact, that similarly situated employees were treated more leniently, or that Domtar somehow deviated from its policies in order to selectively punish Plaintiffs. *See Stallings*, 447 F.3d at 1052 (recognizing several different methods of showing pretext). Because Plaintiffs cannot establish that Domtar's termination decisions were pretextual, their FMLA claims cannot withstand summary judgment.

CONCLUSION

For the reasons discussed herein and above, the Court finds that Defendant Domtar's Second Motion for Summary Judgment should be and hereby is **GRANTED**.  Plaintiffs Lisa Adcock and Teresa Thornton's ADA claims are **DISMISSED WITH PREJUDICE**.  Plaintiffs Lisa Adcock, Sharon Rains, and Teresa Thornton's FMLA claims are **DISMISSED WITH PREJUDICE**. A Judgment of even date, consistent with this Opinion shall issue.

IT IS SO ORDERED, on this 16th day of October, 2012.


/s/ Susan O. Hickey
Hon. Susan O. Hickey
United States District Judge